IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   13-cv-01517-MJW

DAVID R. NASTLEY,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

## OPINION AND ORDER

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

    David Nastley suffers from chronic back and hip pain, attributable to osteoarthritis and similar degenerative diseases.  He hasn't kept a job for more than a few months since 2006, and in 2010 he applied for disability benefits under both Social Security Disability Insurance and Supplemental Security Income.  The government determined, however, that Nastley was not disabled within the meaning of those programs—and he now asks this Court to review the case.

    The Court has jurisdiction under 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3). Both parties have agreed to have this case decided by a U.S. Magistrate Judge under 28 U.S.C. §636(c). The Court AFFIRMS the government's determination.

## Factual Background

    Nastley joined the Army after high school, spending time overseas and learning to work with heavy machinery.  His recent jobs include working as a diesel mechanic for the U.S. Embassy in Russia in 1998, as a diesel mechanic for Denver's Regional

2

Transportation District from 1999 to 2006, and as an aquaculture consultant in Azerbaijan for a brief stint in 2009.

It was in 2005 and 2006 that Nastley began to find his medical conditions debilitating, and in April 2006 he had a discectomy to correct a protruding disc in his back.  Upon the advice of his doctor, he decided he could no longer work as a diesel mechanic.  So he went back to school, at Trinidad State College, earning an associate's degree in aquaculture.  When he graduated in 2009, one of his professors helped him get a job as a contractor for the U.S. Agency for International Development, modernizing a commercial fish farm in Azerbaijan.  But that job involved a fair amount of physical exertion—lifting and carrying feed, jumping in and out of raceways (the chutes through which the fish travelled), and the like—ultimately re-aggravating Nastley's chronic conditions.  He left the job after four or five months, returning to Colorado and seeking treatment.

In January 2010, Nastley applied for disability benefits and, a week later, underwent hip-replacement surgery on his left side.  The surgery was apparently successful—all the medical records in evidence suggest as much—but Nastley continues to complain of chronic and occasionally debilitating pain.

Coinciding with this period of physical impairment, Nastley has also suffered from depression.  He has reported occasional suicidal ideations, but nothing that either his treating psychologist or the government's consultative examiner thought was more than mild.  He has taken medication for his depression for a few years now.

3

The Social Security Administration initially declined Nastley's application for benefits. That decision was effectively made by one person: a single decision-maker ("SDM") at the Colorado Department of Human Service's Disability Determination Service. The SDM interviewed Nastley, reviewed his medical records, and determined that his physical limitations left him with sufficient residual functional capacity ("RFC") to carry out sedentary tasks like unskilled office work. Nastley appealed to an Administrative Law Judge ("ALJ").

The ALJ received updated medical records, up through about 14 months after Nastley's hip surgery (as opposed to the seven months of post-surgery records available to the SDM). He also had the SDM's analysis reviewed by Dr. Anthony LoGalbo, a medical consultant with the Colorado Disability Determination Service, in light of those updated medical records. Dr. LoGalbo found the SDM's analysis to be consistent with the new medical evidence and affirmed it in full—but Dr. LoGalbo's written report was exceedingly brief, totaling well under 100 words.

At the hearing in December 2011, the ALJ took testimony from both Nastley and a vocational expert. Nastley testified to the degree of his pain and exertional limitations, and he testified that his depression leads him to avoid crowds and coworkers. The vocational expert testified that an individual with physical limitations like Nastley's would be capable of performing sedentary work, as well as light work (a category involving a higher level of physical exertion than sedentary work) of the office helper or counter clerk variety. The vocational expert did not testify as to the impact of Nastley's depression.

4

The ALJ found that the limited evidence of mental-health impairments warranted further development, and he thus ordered a consultative psychological examination. Nastley's counsel asked for a consultative examination for physical limitations as well, on the theory that the SDM's analysis (even as evaluated by Dr. LoGalbo) was insufficient evidence. The ALJ declined to order a physical consultative examination, but gave Nastley the opportunity to procure one on his own—at the government's expense. Nastley declined to do so. When the results of the mental-health examination came in, Nastley declined a supplemental hearing.

The ALJ found that Nastley was not disabled, on the last step of the government's five-step sequential analysis. *See* 20 C.F.R. § 404.1520. That is, the ALJ determined that Nastley was not currently working; that he had severe physical and mental impairments; that those impairments did not meet or medically equal the listed impairments that qualify one for benefits without further analysis; that those impairments prevented Nastley from performing his past jobs; but ultimately that those impairments did not prevent Nastley from performing other jobs that are available to him. In coming to this conclusion, the ALJ adopted the SDM's physical RFC analysis (as endorsed by Dr. LoGalbo) and the conclusions of the vocational expert—with the additional conclusion that, although Nastley's mental-health impairments limit him to simple, unskilled, and repetitive office work, those limitations were consistent with the vocational expert's testimony.

5

## Analysis

The Court reviews the ALJ's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. See Pisciotta v. Astrue, 500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Raymond v. Astrue, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted). When reviewing the ALJ's decision, the Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." See Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. See Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

Nastley challenges the ALJ's opinion on three grounds—one going to his physical limitations, one going to his mental limitations, and the last going to the ALJ's vocational analysis.

**I.      Physical Limitations**

Nastley first contends that the ALJ's physical RFC analysis is based on insufficient probative evidence. "In a social security disability case, the claimant bears the burden to prove her disability." Wall v. Astrue, 561 F.3d 1048, 1062 (10th Cir. 2009) (internal quotation marks omitted). But because "administrative disability hearings are nonadversarial . . . the ALJ has a duty to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." Id. "Further, this duty pertains even if the claimant is represented by counsel." Id. at 1063. Accordingly, the

6

ALJ was required to gather enough evidence to evaluate Nastley's functional capacity and make a disability determination. "'The standard' for determining whether the ALJ fully developed the record 'is one of reasonable good judgment.'" *Segura v. Barnhart*, 148 F. App'x 707, 710 (10th Cir. 2005) (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997)).

An adequate record exists here. The ALJ reviewed hundreds of pages of medical records—those pertaining to Nastley's 2006 back surgery, those pertaining to various general-health issues from 2007 through 2009, and those pertaining to his recuperation and physical therapy following his 2010 hip surgery. The ALJ reviewed not only Dr. LoGalbo's review the SDM's analysis in light the recent medical records, but also the recent medical records themselves. Those records include objective third-party observations of Nastley's range of motion, his medications, and radiological evaluations of his artificial hip. None of those recent medical records indicated any ongoing physical limitations. *Cf. Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995) (absence of restrictions or opinions of disability from claimant's treating physicians supported ALJ's finding that he was not disabled). The record is sufficient to enable the ALJ to make a disability determination. The ALJ therefore met his duty to develop the record. *See Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008); 20 C.F.R. § 404.1520b.

Nastley makes two arguments to the contrary. First, he argues that the ALJ improperly relied on the SDM's analysis—because an SDM's determinations are not considered evidence, *see Lopez v. Astrue*, 805 F. Supp. 2d 1081, 1092 (D. Colo. 2011), and Dr. LoGalbo's review of the SDM's work did not cure the defect. Courts in the

7

Tenth Circuit reject this argument. "[E]ven though the opinion of a SDM is worthy of no weight as a medical opinion, a medical consultant might adopt the SDM opinion as his own, and the resulting medical opinion is then properly evaluated to determine whether it might be accorded particular weight in the Commissioner's decision." *Gerard v. Colvin*, 2014 WL 2095169, at *4 (D. Kan. May 20, 2014) (citing *Thongleuth v. Astrue*, No. 10–1101–JWL, 2011 WL 1303374, at *11–12 (D. Kan. Apr. 4, 2011)); *see Pelzer v. Colvin*, 2014 WL 1875163, at *3–4 (D. Kan. May 9, 2014) (ALJ did not err in relying on an "opinion affirmed by an acceptable medical source" after reviewing the case in its entirety). Dr. LoGalbo's review of the SDM's analysis, though brief, constitutes a medical opinion under 20 C.F.R. § 404.1527(a)(2). The ALJ found it to be consistent with the record as a whole, and that finding is supported by substantial evidence. Thus, the ALJ did not err.

Nastley also argues that the ALJ should have ordered a consultative examination. But an ALJ has broad latitude on the question, and consultative examinations are generally necessary only where the record is inconclusive. *See Harlan v. Astrue*, 510 F. App'x 708, 712–13 (10th Cir. 2013); 20 C.F.R. § 404.1519a(b). Further, as the government points out, the ALJ specifically advised Nastley's counsel of his right to procure a consultative examination on his own initiative and at the government's expense. His decision not to do so seriously undermines his claim that the ALJ should have done more. *See Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) ("Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record . . . and later fault the ALJ for

8

not performing a more exhaustive investigation."); *see also* 20 C.F.R. § 404.1517 (with advance approval, government will pay for consultative examination ordered by claimant).

The ALJ's findings as to Nastley's physical RFC are supported by sufficient evidence and may not be disturbed by this Court.

## II.      Mental-Health Limitations

Nastley next contends that the ALJ addressed only part of the consultative examiner's report, improperly ignoring the rest of the report. The examiner, Dr. Frederick Leidal, provided a comprehensive evaluation report, including both a narrative opinion of functional limitations and a checklist version of that opinion (AR 763–65). The narrative version came to these conclusions:

1) The claimant's ability to understand, remember and carry out simple oral instructions is similar compared to other adults of the same age. On this exam the claimant has clearly shown the ability to follow the examiner's questions and directions, oral instructions on mental status and provide simple appropriate responses. The claimant's ability to follow more complex instructions or directions seemed less than average for age expecta[t]ions.

2) The claimant's ability to maintain attention and concentration was below average compared to other adults the same age. Persistence and pace in providing personal information and response to mental status appeared below average. The ability to perform a simple, repetitive task appeared good. Ability to perform multi-step tasks appeared below average for age expectation. The claimant was not overly distracted on exam.

3) The claimant's ability to relate to others, such as peers, fellow workers and/or supervisors appears to be below average, although, he reports he has a few friends. This is supported by reports of past social adaptive behaviors and relationships.

9

    4) The claimant's ability to withstand the mental stress and pressures associated with day-to-day work activity appears below average, and compromised by depressed mood, but mostly by his chronic pain complaints. This is supported by the claimant's past and current mental health symptoms, currently reported adaptive behaviors, and life-style.

(AR 763). On the accompanying checklist, Dr. Leidal expressed his opinion as to Nastley's limitations in ten specific mental activities—six under the heading of "ability to understand, remember, and carry out instructions," and four under the heading of "ability to interact appropriately with supervisors, co-workers, and the public, as well as respond to changes in the routine work setting" (AR 764–65). In the first category, Dr. Leidal scored Nastley as having no restrictions in three activities, a mild restriction in a fourth, and moderate restrictions in the last two. (*Id.*) In the second category, Dr. Leidal scored Nastley has having mild restrictions in two activities and "mild to moderate" restrictions in the other two. (*Id.*)

In discussing Dr. Leidal's opinion for purposes of an RFC analysis, the ALJ gave some discussion to the first category of mental activities—ability to understand, remember, and carry out instructions (AR 21). He agreed with Dr. Leidal and found that Nastley's RFC was restricted to "simple, repetitive, unskilled tasks" (AR 18). However, the ALJ did not discuss Dr. Leidal's opinion as to Nastley's social-functioning impairments at any point in the RFC analysis.[1]

---

[1] Earlier in the opinion—at the "Step 3" analysis—the ALJ summarily concluded that Nastley's social-functioning impairments were mild. But as the government has correctly argued, the "Step 3" analysis is independent of and has no bearing on the RFC analysis. *Beasley v. Colvin*, No. 12–6256, 2013 WL 1443761, at *5 n.3 (10th Cir. Apr. 10, 2013); *DeFalco-Miller v. Colvin*, No. 12–1245, 2013 WL 1406014, at *6 n.5 (10th Cir. Apr. 9, 2013).

10

This was error. The Tenth Circuit takes medical opinions, as defined in 20 C.F.R. § 404.1527(a)(2), seriously. Most medical opinions offer a conclusion as to more than one functional limitation. Where that happens, an RFC assessment must resolve each such limitation—either adopting it, reconciling it with conflicting evidence, or explicitly declining to adopt it for specific reasons. *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."); *see also Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." (internal citation omitted)).

In *Haga*, the Tenth Circuit considered an ALJ opinion that failed to comment on some "moderate" limitations. 482 F.3d at 1208. Here, by contrast, the ALJ failed to comment on limitations that were "mild" or "mild to moderate." But at least three judges in this district have applied the reasoning of *Haga* to "mild" limitations. *See Garcia v. Colvin*, Docket No. 13-cv-01353-RBJ, 2014 WL 3953139, at *8–9 (D. Colo. Aug. 13, 2014) (Jackson, J.); *McCaffrey v. Astrue*, Docket No. 10-cv-01943-PAB, 2011 WL 4536980, at * 11–12 (D. Colo. Sept. 30, 2011) (Brimmer, J.); *Garver v. Astrue*, Docket No. 09-cv-02259-WYD, 2011 WL 1134721, at *11–12 (D. Colo. Mar. 28, 2011) (Daniel, then-C.J.). And it seems particularly appropriate to apply *Haga* here, for two reasons.

11

First, Dr. Leidal's narrative discussion used the same strength of language to discuss the degree of social limitations as it did for other mental limitations, suggesting that the doctor did not see material distinctions between the severity of one versus the others. Second, on the checklist, the doctor created a "mild to moderate" category rather than simply marking the "mild" box. It may or may not be appropriate to extend *Haga* categorically to all cases raising "mild" limitations—but the Court need not decide that question today. The facts of this case suggest that *Haga* should apply here.

The government argues that the limitations found by Dr. Leidal are part of the Step 3 analysis—whether Nastley's impairments rise to the level of a "listed" impairment making him presumptively disabled—and for that reason need not be discussed in the RFC analysis (Docket No. 15, pp. 12–13). For support, the government cites *Beasley v. Colvin*, No. 12–6256, 2013 WL 1443761 (10th Cir. Apr. 10, 2013), and *DeFalco-Miller v. Colvin*, No. 12–1245, 2013 WL 1406014 (10th Cir. Apr. 9, 2013). Those cases are inapposite. Both cases address whether an ALJ's finding that a claimant has a moderate level of impairment in the Step 3 analysis binds the ALJ for purposes of the RFC analysis, requiring a corresponding limitation in the RFC conclusion. The Tenth Circuit consistently holds that an ALJ is not so bound. But in both cases, the ALJ expressly discussed the limitation at issue. In *Beasley*, for example, the ALJ found the claimant had "moderate difficulties" in social functioning during its Step 3 analysis. 2013 WL 1443761, at *5. The ALJ then "found that, in spite of any limitations in social functioning, Ms. Beasley could 'respond appropriately to supervision, co-workers, the general public, and usual work situations.'" *Id.* The ALJ did not fail to address the

issue, and thus did not fall short of his obligations under *Haga*. Here, by contrast, the question is not whether the ALJ's RFC analysis is bound by the Step 3 analysis, but whether it must discuss all related limitations in a medical opinion.

Further, the government's argument is foreclosed by *Wells v. Colvin*, 727 F.3d 1061 (10th Cir. 2013). The Tenth Circuit there noted the conflicting circuit precedent on the relationship between mental limitations found in the Steps 2 and 3 analysis, on the one hand, and those in the RFC analysis, on the other hand. *Id.* at 1064–65 & n.2. The ALJ in that case had found that the claimant had "mild" limitations in certain broad categories for purposes of the Steps 2 and 3 analysis, then deferred to that analysis in his RFC analysis—cursorily finding that the claimant had no functional limitations caused by mental impairments. *Id.* at 1065 & n.3. The Tenth Circuit concluded that this was error:

> [T]the Commissioner's regulations, together with the rulings interpreting those regulations, provide us with the appropriate path to follow here. These regulations inform us, first, that in assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). Second, the Commissioner's procedures do not permit the ALJ to simply rely on his finding of non-severity as a substitute for a proper RFC analysis. *See* Social Security Ruling (SSR) 96–8p, 1996 WL 374184, at *4 (July 2, 1996) . . . . Finally, and most importantly, the ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." *Id.* at *7.

*Id.* at 1065–66. Thus, the Tenth Circuit held that all medically determinable limitations must be addressed in some way the ALJ's RFC analysis.

13

The ALJ here accepted Dr. Leidal's opinion as to one category of mental limitations, but ignored the other category.  It cannot even be said that the ALJ addressed it at a higher level of generality, as the government appears to argue (*see* Docket No. 16, p. 14).  The ALJ simply left it out of his opinion altogether.  Applying *Haga* and *Wells*, the ALJ erred.

### III.     Harmless Error/Vocational Opportunities

Social Security appeals are subject to a harmless-error standard, and it is therefore necessary to see whether the ALJ's error affected the outcome of the case.  Notably, though, the Tenth Circuit has cautioned against application of the harmless error doctrine so as to "avoid usurping the administrative tribunal's responsibility to find the facts" and to prevent "violating the general rule against post hoc justification of administrative action."  *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).  The doctrine therefore applies only if the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."  *Allen*, 357 F.3d at 1145.

Here, there is simply no way to come to that conclusion.  First, reviewing the record as a whole, this Court concludes that reasonable administrative factfinders could come to more than one conclusion as to the weight due Dr. Leidal's opinion of Nastley's social functioning, as well as more than one conclusion as to the impact of Nastley's social functioning on his RFC.  Further, those decisions may or may not have the potential to change the disability determination—the current record does not answer that question, because the vocational expert who testified at Nastley's hearing was not

14

asked any questions about the effect of mental limitations on Nastley's job prospects (*see* AR 67–81).  The ALJ found that the vocational expert's testimony was consistent with the simple, repetitive jobs the ALJ believed Nastley capable of—but that reasoning would not automatically extend to the social-functioning limitations suggested by Dr. Leidal.  The Court concludes that a reasonable factfinder, having correctly discussed and weighed all of Dr. Leidal's opinion, could find Nastley disabled—or rather, on the current record, the Court cannot conclude otherwise.  The error is therefore not harmless error.

## **Conclusion**

For the reasons set forth above, the Commissioner's decision is REMANDED to the Commissioner.  Upon rehearing, the Commissioner is to (1) expressly consider all limitations suggested by Dr. Leidal; (2) if appropriate, update the RFC analysis; and (2) if appropriate, develop any further record necessary to complete the Step 5 vocational analysis.

Dated this 24th day of September, 2014.

BY THE COURT:

/s/ Michael J. Watanabe
MICHAEL J. WATANABE
United States Magistrate Judge